UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **CHIKUYO ASINIA BAYETE**<br><br>Petitioner,<br><br>v.<br><br>**JOHN WETZEL,** *et al*.<br><br>Respondents. | **Civil Action No. 16-1 ERIE**<br><br>**ORDER ADOPTING REPORT AND RECOMMENDATION** |

## I. INTRODUCTION

Before the Court is the Report and Recommendation of Magistrate Judge Susan P. Baxter in which she recommends that this Court deny the Petition for a Writ of Habeas Corpus filed by state prisoner Chikuyo Asinia Bayete ("Petitioner"). Dkt. No. 14. Petitioner timely filed objections to the Report and Recommendation. Dkt. No. 19. Having reviewed the Report and Recommendation, the objections thereto, the record of the case, and the relevant legal authorities, the Court will adopt the Report and Recommendation in full and deny the Petition for Writ of Habeas Corpus. The reasoning for the Court's decision follows.

## II. BACKGROUND

In September 2012, a jury in the Court of Common Pleas of Erie convicted Petitioner of robbery, assault, and related crimes. The charges stem from the following events as presented by the Commonwealth to the jury:

On November 21, 2011, Petitioner and his brother Shanti Bayete ("Shanti") forced their way into the apartment of Jordan Tracy ("Jordan") where they assaulted the occupants (Jordan,

1

his brother Jarod Tracy ("Jarod"), and their friend Korrine Carson ("Korrine")) and stole a safe containing approximately $3,000. Jordan, Jarod, and Korrine testified that the two men had on dark clothing, hosiery covering their faces, and were wearing plastic gloves. After the robbery, Petitioner and Shanti fled the apartment on foot. As they were fleeing, Shanti was shot and died instantly. By this time, Jordan and Korrine were standing on the apartment balcony. Jordan testified at trial that after Shanti was shot, Petitioner kneeled down by Shanti's body and pulled the hosiery off his (Petitioner's) face. Jordan testified that he immediately recognized Petitioner as someone he knew. Jordan yelled at Petitioner "I know who you are," and Petitioner ran away.

A police officer arrived at the scene of the shooting shortly thereafter. When he arrived, Jordan and Korrine were standing by Shanti's body. The police officer testified that Jordan and Korrine told him that they had just been robbed by Shanti and another man, and that they could identify the other man. Another officer who was also responding to the shooting saw Petitioner running from the direction of the shooting. He stopped Petitioner and questioned him. The officer testified that he observed that Petitioner was wearing a dark coat and had blood on his boots. The officer further testified that Petitioner told him that his brother had been shot. The officer took Petitioner back to the scene of the shooting where Jordan, Korrine, and Jarod identified him as the other individual who had robbed and assaulted them.

Petitioner gave a statement to the police in which he admitted that he had been kneeling over his brother's body right after the robbery took place. However, he claimed that he had not participated in the robbery, but rather, had arrived at the scene only after the shooting occurred. He claimed that he had been walking towards Jordan's apartment because he knew that Shanti had gone there to buy marijuana and he wanted to see why it was taking his brother so long to

return. He said that as he approached Jordan's apartment building, he came upon Shanti's body in the street and that is when Jordan saw him kneeling over Shanti's body.

Petitioner testified at trial and his testimony was consistent with the statement he gave to the police.

The jury convicted Petitioner of robbery, criminal conspiracy, burglary, theft by unlawful taking, possessing instruments of crime, former convict not to possess a firearm, and three counts of simple assault. The trial court sentenced him to a lengthy aggregate term of imprisonment and, on November 26, 2012, the Superior Court of Pennsylvania affirmed the judgment of sentence in a decision issued on February 7, 2014. (ECF No. 5-5, *Commonwealth v. Bayete*, No. 1169 WDA 2013, slip op. (Pa.Super.Ct. Feb. 7, 2014)).

Thereafter Petitioner timely filed a motion for collateral relief pursuant to Pennsylvania's Post Conviction Relief Act ("PCRA"), 42 Pa.C.S. § 9541 *et seq*. He claimed that his trial counsel provided ineffective assistance of counsel because they failed to: (1) seek suppression of the out-of-court identifications that Jordan, Korrine, and Jarod gave to the police when the Petitioner was brought back to the scene of the shooting; (2) comply with the notice requirements of Pennsylvania Rule of Criminal Procedure 567, thereby precluding the defense from being able to present the testimony of an alibi witness; (3) object to the admission of photographs of Shanti's body during trial; and (4) object to the admission of the evidence that the Petitioner had previously been convicted of a felony drug offense. The trial court denied the motion and on September 16, 2015, the Superior Court affirmed the trial court's denial of Petitioner's request

for PCRA relief. (ECF No. 5-6, *Commonwealth v. Bayete*, No. 1150 WDA 2014, slip op. (Pa.Super.Ct. Sept. 16, 2015)).

The instant petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 followed. Dkt. No. 1. Petitioner raises the same four claims for relief in this petition as he asserted in his petition for collateral relief with the state courts.

### III. LEGAL STANDARD

Where objections to a magistrate judge's report and recommendation are timely filed, the district court must conduct a *de novo* review of the contested portions of the report. *Sample v. Diecks*, 885 F.2d 1099, 1106 n.3 (3d Cir. 1989) (citing 28 U.S.C. § 636(b)(1)(c)). In conducting a *de novo* review, the court may accept, reject, or modify, in whole or in part, the factual findings or legal conclusions of the magistrate judge. 28 U.S.C. § 636(b)(1); *Owens v. Beard*, 829 F. Supp. 736, 738 (M.D. Pa. 1993). Although the review is *de novo*, the law permits the court to rely on the recommendations of the magistrate judge to the extent it deems proper. *United States v. Raddatz*, 447 U.S. 667, 675–76 (1980); *Ball v. U.S. Parole Comm'n*, 849 F. Supp. 328, 330 (M.D. Pa. 1994). Because Petitioner filed timely objections to the Report and Recommendation of Magistrate Judge Baxter, this Court will perform a de novo review of Petitioner's claims.

### IV. DISCUSSION

As stated earlier, Petitioner claims that his attorneys provided him ineffective assistance of counsel in violation of his Sixth Amendment rights. To prevail on an ineffective assistance claim, Petitioner must establish that his trial attorneys' "representation fell below an objective standard of reasonableness." *Strickland v. Washington*, 466 U.S. 668, 688 (1984). "This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel'

guaranteed by the Sixth Amendment." *Id*. at 687. The United States Supreme Court has instructed that:

> [s]urmounting *Strickland's* high bar is never an easy task. An ineffective assistance claim can function as a way to escape rules of waiver and forfeiture and raise issues not presented at trial, and so the *Strickland* standard must be applied with scrupulous care, lest 'intrusive post-trial inquiry' threaten the integrity of the very adversary process the right to counsel is meant to serve. Even under *de novo* review, the standard for judging counsel's representation is a most deferential one. Unlike a later reviewing court, the attorney observed the relevant proceedings, knew of materials outside the record, and interacted with the client, with opposing counsel, and with the judge.

*Harrington v. Richter*, 562 U.S. 86, 105 (2011) (internal citations and quotes omitted).

*Strickland* also requires that Petitioner demonstrate that he was prejudiced by his trial counsel's alleged deficient performance. This places the burden on him to establish "that there is a reasonable probability that, but for counsel's unprofessional errors," the result of his trial "would have been different." *Strickland*, 466 U.S. at 694; *Brown v. Wenerowicz*, 663 F.3d 619, 630 (3d Cir. 2011) (noting that the likelihood of a different result must be substantial, not just conceivable).

Lastly, because the Pennsylvania Superior Court's prior decision denying Petitioner collateral relief was on the merits of Petitioner's ineffective assistance of counsel claims, this Court's review of the decision is extremely limited by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). Under the AEDPA, this Court is limited to determining whether the Superior Court's decision is "contrary to" or involved an "unreasonable application" of clearly established federal law as determined by the Supreme Court of the United States," or if the decision was based on an "unreasonable determination" of the facts in light of the evidence presented. *Thomas v. Horn*, 570 F.3d 105, 113 (3d Cir. 2009). "It is not enough that a federal habeas court, in its independent review of the legal question, is left with a firm conviction that

the state court was erroneous." *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003) (internal citations omitted). "Under § 2254(d)(1)'s 'unreasonable application' clause ... a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id*. at 75–76 (quoting *Williams v. Taylor*, 529 U.S. 362, 411 (2000)). Rather, the state court's "application of clearly established law must be objectively unreasonable" before a federal court may grant the writ. *Andrade*, 538 U.S. at 75; *Harrington v. Richter*, 562 U.S. 86, 102 (2011) ("As amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal-court relitigation of claims already rejected in state proceedings. It preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [United States Supreme Court] precedents. It goes no further. Section 2254(d) reflects the view that habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal.") (internal citations omitted).

### A. Petitioner's Ineffective Assistance of Counsel Claims

As stated earlier, Petitioner claims that his trial counsel provided him ineffective assistance by failing to: (1) move to suppress the out-of-court identifications that Jordan, Korrine, and Jarod gave to the police when the Petitioner was brought back to the scene of the shooting; (2) comply with the technical notice requirements of Pennsylvania Rule of Criminal Procedure 567, thereby precluding the defense from being able to present the testimony of an alibi witness; (3) object to the admission of photographs of Shanti's body during trial; and (4)

6

object to the admission of the evidence that the Petitioner had previously been convicted of a felony drug offense. The Court will address each claim in turn.

### 1. Counsel's Failure to Move to Suppress the Out-of-Court Identifications by Jordan, Korrine, and Jarod

Petitioner argues that the out-of-court identifications by Jordan, Korrine, and Jarod were the product of unduly suggestive procedures by the police in that the police transported Petitioner to the scene in a patrol car, in handcuffs, and covered in blood. He claims that his counsel's failure to move for suppression of these identifications constitutes ineffective assistance of counsel that entitles him to a new trial.

The Superior Court disagreed with Petitioner. It noted that in order for Petitioner to be entitled to the relief he requested, he must establish that "there was no reasonable basis for not pursuing the suppression claim and that if the evidence had been suppressed, there is a reasonable probability the verdict would have been favorable" to Petitioner. Dkt. No. 5, Ex. 6 at 8 (quoting *Commonwealth v. Melson*, 556 A.2d 836, 839 (Pa. Super. 1989)). The Superior Court did not address whether Petitioner's counsel had a reasonable basis for not seeking suppression of the out-of-court identifications. Rather, it focused on whether Petitioner could establish that there was a reasonable possibility that the verdict would have been favorable to him if the identifications had been suppressed. The Superior Court determined that Petitioner was unable to meet this burden due to the fact that Jordan had also made an in-court identification of Petitioner during the trial. The Superior Court determined that this in-court identification was admissible because it was based on the "criminal act and not the suggestive [identification procedure]." *Id*.

7

at 10 (quoting *Commonwealth v. David*, 17 A.3d 390, 394 (Pa. Super. 2011). The Superior Court concluded that Jordan's in-court identification was reliable because:

> Jordan had an opportunity to view [Petitioner] while he robbed the apartment, wearing dark clothing and a mask. Jordan then saw [Petitioner's] face while [Petitioner] was bent over his dead brother's body and lifted his mask. Jordan immediately recognized [Petitioner] as someone he had seen before in the neighborhood, specifically, the brother of Jordan's friend, Jerimiah.

*Id*. The Superior Court noted that this in-court identification coupled with the "corroborative stories of the other witnesses and [Petitioner's] admission that he was at the crime scene, dragging his brother in the street, implicated [Petitioner] as one of the two robbers." *Id*. at 11-12. Therefore, the Superior Court concluded, "[e]ven if the [trial] court had granted a motion to suppress the out-of-court identification, there is not a reasonable probability that the result of the trial would have been more favorable to [Petitioner]." *Id*. at 12.

This Court agrees with the Magistrate Judge's recommendation that Petitioner has failed to demonstrate that the Superior Court's reasoning "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Richter*, 562 U.S. at 103. Jordan testified at trial that he witnessed the same person who robbed and assaulted him lift his mask after Shanti was shot. Jordan further testified that after the individual lifted his mask, he recognized the individual as Petitioner, someone he knew. Simply put, the Superior Court's adjudication of this claim does not amount to an "unreasonable application of" *Strickland*. Petitioner's claim for relief based on his trial

counsel's failure to seek suppression of the out-of-court identifications by Jordan, Korrine, and Jarod must be denied.

>   2. **Counsel's Failure to Comply with Rule 567 of the Pennsylvania Rules of Criminal Procedure**

Petitioner claims that his counsel failed to comply with the notice requirements of Rule 567 of the Pennsylvania Rules of Criminal Procedure, which precluded Petitioner from presenting Loni Sherod ("Sherod") as an alibi witness. Petitioner alleges that Sherod could have corroborated his own trial testimony that the reason Petitioner was at the scene of the shooting was because he went to check on his brother, not because he participated in the robbery. Petitioner claims that he was unable to call Sherod as a witness because his counsel failed to comply with the notice requirements of Rule 567. Therefore, Petitioner argues, he is entitled to an evidentiary hearing or new trial.

The Superior Court noted that in order for Petitioner to be entitled to relief on this claim, he would have to establish that there "is a reasonable probability that the introduction" of Sherrod's testimony "would have altered the outcome of the trial. *Id*. at 13 (quoting *Commonwealth v. Johnson*, 966 A.2d 523, 540 (Pa. 2009)). The Superior Court concluded that Petitioner did not meet this burden, noting that even if he could establish that his attorneys had "no reasonable strategy for failing to call Sherod as an alibi witness," Petitioner did not establish that failing to call Sherod prejudiced Petitioner in anyway. *Id*. at 14. Specifically, the Superior Court stated:

> [Petitioner] admits to being at the crime scene, minutes after the crime, holding his bleeding brother in his arms in the street. Jordan testified that he saw [Petitioner] rob his apartment and then lift his mask while standing over the body. The police testified that they saw [Petitioner] immediately after the crime, covered in blood and wearing dark clothing. [Petitioner] testified that he was coincidentally there at the time to check on his brother, who had departed to purchase marijuana from Jordan. If he had testified Loni Sherrod may or may not have corroborated

9

> [Petitioner's] story. However, he would not have presented any new information that would have placed [Petitioner] anywhere other than at the crime scene immediately after the crime. Thus, [Petitioner] has failed to prove by a preponderance of the evidence that the outcome of the trial would have been different if Mr. Sherrod had testified.

*Id*. at 14. Once again, this Court agrees with the Magistrate Judge's assessment that Petitioner has not established that the Superior Court's adjudication of this claim is "objectively unreasonable." *Andrade*, 538 U.S. at 75. First, it is clear from the record that Mr. Sherod was "disinterested" in testifying at trial, which is why Petitioner's counsel was unable to satisfy the Rule 567 requirements. Trial Tr. Day 1 at 126-127. Second, it was not "objectively unreasonable" for the Superior Court to conclude that although Mr. Sherod may have substantiated Petitioner's claim that he was had not participated in the robbery, but rather, Petitioner found his brother when he went to look for him because it was taking his brother so long to return from Jordan's house. In light of the other testimony the jury heard at trial, particularly Jordan's testimony that he recognized Petitioner after he removed his mask when he was kneeling over Shanti's dead body, it is not objectively unreasonable for the Superior Court to conclude that it was not "reasonably possible" that Sherod's testimony would have "altered the outcome of the trial." *Johnson*, 966 A.2d at 540 Therefore, Petitioner's claim for relief based on his trial counsel's failure to comply with the notice requirements of Rule 567 of the Pennsylvania Rules of Criminal Procedure must be denied.

### 3. Counsel's Failure to Object to the Admission of Photographs of Petitioner's Deceased Brother

Petitioner next argues that his trial counsel was ineffective for failing "to object to the admission of irrelevant, inflammatory and unduly prejudicial photographs" of Shanti's body. The Superior Court concluded that Petitioner's claim "lacks arguable merit because [he] was not on trial for the murder of his brother, and he fails to articulate how the photographs were prejudicial

to his trial for burglary." *Id*. at 15. In the instant petition, Petitioner argues that the "pictures allowed the jury to draw inferences" that prejudiced him. Dkt. No. 19 at 3. Without saying as much, Petitioner suggests that the introduction of the photographs of his brother's dead body into evidence may have caused the jury to infer that Petitioner was somehow responsible for his brother's death and, therefore, be more likely to convict him of the other crimes for which he was on trial. While this Court questions why the photographs were introduced into evidence, Petitioner does not present any evidence to suggest that the jury was improperly influenced. Indeed, as the Magistrate Judge points on in the Report and Recommendation, Petitioner's defense team suggested during the trial that either Jordan or Jarod was responsible for his brother's death.[1] If anything, the photographs of his brother's body may have garnered sympathy for Petitioner from the jury. Therefore, as was the case with Petitioner's two prior claims, there is no basis for this Court to conclude that the Superior Court's decision to deny Petitioner's ineffective assistance claim on this ground was an "unreasonable application of" *Strickland*.

### 4. Counsel's Failure to Object to the Admission of Evidence that Petitioner Had Been Previously Convicted of a Felony Drug Offense

Petitioner's final claim for relief is based on his counsel's failure to object to the admission of evidence that he had been previously convicted of a felony drug offense. This information was introduced via a stipulation (one of the charges against Petitioner was that he had been previously convicted of an offense that prohibited him from possessing a firearm pursuant to 18 Pa.C.S. § 6105). After entering the stipulation, the trial court advised the jury as follows:

> Stipulations are agreements between the parties that certain evidence may be placed before you without having a witness come in and testify to that evidence. You may

---

[1] At the time of the trial, the Commonwealth had not arrested anyone in the shooting death of Shanti.

11

> accept that evidence just as if a witness had testified to it and it now becomes part of the overall evidence in the case for your consideration.
>
> Let me also say as to the stipulation to the fact that the defendant has a prior conviction which precludes him from owning a firearm, that prior conviction is not in any way, shape, or form any evidence of the defendant's guilt in this case. The sole purpose for the admission of that prior conviction is to show that the defendant is not allowed, under Pennsylvania law, to own a firearm because of it, and that is part of the charge that … had been lodged against him at Count Number 11 and I will instruct you specifically on the elements of that charge at a later time.

Day One Trial Tr. at 124-25. In reviewing Petitioner's objection to his counsel's consent to the stipulation, the Superior Court noted that Pennsylvania law "presumes that the jury will follow the instructions of the court." Dkt. No. 5, Ex. 6 at 16 (quoting *Commonwealth v. Chmiel*, 30 A.3d 1111, 1184) (Pa. 2011)). Therefore, the Superior Court concluded, because "the law presumes the jury followed the [trial] court's [curative] instruction, [Petitioner] [] suffered no prejudice." *Id*.

Petitioner argues that the admission into evidence of his prior criminal activity left the jury with the impression that he "was guilty and had been found with drugs and weapon(s) and truly biased [his] trial" and his attorneys' failure to object to the admission of that evidence demonstrated their "ineffectiveness." Dkt. No. 19 at 3. Once again, Petitioner has failed to establish that the Superior Court's decision so lacked justification that this Court may grant him his requested relief. The trial court instructed the jury that it may not infer guilt from the agreed-stipulation; Pennsylvania law presumes the jury will follow the court's instruction. Therefore, the Superior Court had ample justification for denying Petitioner's ineffective assistance of counsel claim on this issue.

## V. CONCLUSION

Applying AEDPA's deferential standard in reviewing Petitioner's habeas petition, this Court holds that the Pennsylvania Superior Court did not err in denying Petitioner's claims based

12

on ineffective assistance of counsel. Therefore, this Court HEREBY ADOPTS in full the Report and Recommendation of the Magistrate Judge and DENIES the petition for writ of habeas corpus.

Dated this 2nd day of May, 2018.

_____
Barbara Jacobs Rothstein
U.S. District Court Judge